JAMES R. CARROLL AND DOROTHY A. CARROLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carroll v. Commissioner
Docket No. 15964-91
United States Tax Court
T.C. Memo 1994-229; 1994 Tax Ct. Memo LEXIS 233; 67 T.C.M. (CCH) 2995; May 24, 1994, Filed *233 For petitioners: Dudley W. Taylor. For respondent: William W. Kiessling. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined a deficiency of $ 19,179.25 in petitioners' 1988 Federal income tax. The deficiency was attributable to respondent's disallowance of a $ 58,119 subchapter S pass-through loss reported on petitioners' 1987 income tax return and carried over to their 1988 income tax return as part of a net operating loss. By amendment to answer, respondent alleged an increase in deficiency attributable to disallowance of a $ 10,000 subchapter S pass-through section 179[1] expense deduction that was reported on petitioners' 1987 income tax return and carried over to their 1988 income tax return as part of the net operating loss. The disallowance of the pass-through section 179 expense deduction increased the deficiency to $ 22,479.25. *234 The sole issue for decision is whether Volunteer Distribution Co. (Volunteer) timely filed Form 2553, Election by a Small Business Corporation, which would entitle petitioners to deduct the 1987 pass-through loss and section 179 expense deduction of Volunteer. We find that Volunteer did not timely file Form 2553. FINDINGS OF FACT The parties have stipulated some of the facts, and the Stipulation of Facts and attached exhibits are incorporated in this opinion. James and Dorothy Carroll (petitioners) resided in Knoxville, Tennessee, when they filed their petition. For 1986, 1987, and 1988, they treated Volunteer as an S corporation and included its pass-through income or loss and pass-through deductions on their Forms 1040 for those years. Volunteer was formed under Tennessee law on October 10, 1985. James Carroll (petitioner) purchased the stock of Volunteer on November 8, 1986. Petitioner's accounting firm, Finn & Rose Certified Public Accountants (Finn & Rose), prepared Form 2553, Election by a Small Business Corporation, for Volunteer, to be effective as of November 8, 1986. On January 21, 1987, petitioner, as consenting shareholder and as an officer of Volunteer, signed *235 the Form 2553 (the original Form 2553) that he had received from Finn & Rose. [2]
Because petitioner's office did not regularly use Form 2553, petitioner gave the executed original Form 2553 to his personal secretary, Janice Gose, for special handling. He gave her the original Form 2553 with his memorandum, which stated: 1-21 1987 To Janice From JRC Finn & Rose said this *236 needs to be mailed today. Per Dudley [petitioner's counsel herein] mail to: IRS Service Center Memphis, TN 37501 Ms. Gose had worked for petitioner for about 20 years, although she did not work for him at the time of trial. After Ms. Gose received the original Form 2553 and petitioner's memorandum, she prepared an envelope in accordance with petitioner's instructions, made a copy of the original Form 2553 for Volunteer's files, and affixed the necessary postage. Ordinarily, mail was weighed, run through the office postage meter, and left until the end of the day when Ms. Gose bundled it for delivery to the post office by Harold Traylor. However, because the original Form 2553 was a tax form and petitioner had given it to her with a memorandum that it needed to be mailed that day, Ms. Gose gave it special handling. Instead of leaving the envelope containing the original Form 2553 by the postage meter and bundling it with the ordinary mail, Ms. Gose kept it on her desk and handed it to Mr. Traylor. After Ms. Gose saw that Mr. Traylor had left for the post office, she wrote on petitioner's memorandum: "Taken to Post Office by Harold". Mr. Traylor worked for petitioner from *237 1985 to 1990. His responsibilities included taking mail to the U.S. post office each day. When Mr. Traylor took ordinary mail to the post office, he dropped it in the drive-through postal box outside the post office, but, if Ms. Gose handed him an envelope and told him that it was important, he dropped it off inside the post office. Mr. Traylor does not remember what he did on January 21, 1987, but he always delivered mail that Ms. Gose gave him on the same day that she gave it to him. Ms. Gose did not prepare the envelope containing the original Form 2553 for mailing by registered mail or certified mail, and Mr. Traylor did not mail it by registered mail or certified mail. The original Form 2553, mailed on January 21, 1987, was the only Form 2553 mailed to respondent by Volunteer before September 13, 1988. Respondent's search of service center files uncovered no evidence that respondent had received the original Form 2553. For 1986, the previous owners of Volunteer filed Form 1120, U.S. Corporation Income Tax Return, for Volunteer under Employer Identification Number (EIN) 62-1260837. This Form 1120 does not indicate that it was for a short period or that it was a final return. *238 Respondent has a record of this return in her files. Finn & Rose prepared Form 1120S, U.S. Income Tax Return for an S Corporation, for Volunteer under EIN 62-1298877 for the period November 8, 1986, through December 31, 1986. Although petitioner believes that he filed Volunteer's 1986 Form 1120S, respondent has no record of receiving it. For 1987 and 1988, Volunteer timely filed, without extensions, Forms 1120S under EIN 62-1298877. Respondent had provided Volunteer with a preprinted label, which included name, address, EIN, and period ending December, 1987. This label was attached to Volunteer's 1987 Form 1120S. The 1987 and 1988 Forms 1120S were initially rejected by respondent, the 1987 Form 1120S by a notice dated July 21, 1988 (the 1988 notice), and the 1988 Form 1120S by a notice dated July 28, 1989 (the 1989 notice). When petitioner received these notices, he forwarded them to his accountant. On September 13, 1988, petitioner's accountant wrote respondent a letter (the 1988 letter) in response to the 1988 notice. The 1988 letter stated, "We do not understand what the problem is. You did not have any trouble processing the 1986 1120S, [and] you sent a 1987 1120S forms *239 booklet." Attached to the 1988 letter was a copy of page 1 of Volunteer's 1986 Form 1120S and a copy of the original Form 2553. On August 14, 1989, petitioner's accountant wrote respondent a letter (the 1989 letter) in response to the 1989 notice. The 1989 letter asked respondent to correct her records and included copies of the 1988 letter, page 1 of the 1986 and 1987 Forms 1120S, the original Form 2553, the 1988 notice, and the 1989 notice. In a notice dated September 25, 1989, respondent accepted Volunteer's election to be treated as an S corporation, effective January 1, 1988. The notice stated: IF YOUR EFFECTIVE DATE IS NOT AS REQUESTED, IT WILL HAVE BEEN CHANGED FOR ONE OF TWO REASONS. EITHER YOUR ELECTION WAS MADE AFTER THE 15TH DAY OF THE THIRD MONTH OF THE TAX YEAR TO WHICH IT APPLIES, BUT BEFORE THE END OF THAT TAX YEAR, OR THE ELECTION WHEN SUBMITTED WAS INCOMPLETE, AND REQUESTED INFORMATION WAS RECEIVED AFTER THE FILING PERIOD. IN EITHER CASE, YOUR ELECTION IS INVALID FOR THE TAX YEAR REQUESTED AND HAS THEREFORE, BEEN TREATED AS THOUGH IT WERE MADE FOR THE NEXT TAX YEAR.
The original Form 2553, as executed by petitioner, was complete, and respondent had *240 not requested information from Volunteer prior to the 1988 notice. Respondent accepted Volunteer's election under a policy of respondent's National Office. The policy provides that if, after the Commissioner sends a corporation a letter rejecting its Form 1120S for a taxable year, the corporation provides a copy of a completed Form 2553 purporting to be effective for that year, the Commissioner will accept the corporation's election for the next taxable year. [3]
Petitioners reported the following distributive share items *241 from Volunteer on their Forms 1040: Ordinary Income (Loss)
Sec. 179
1986
$ 5,135 1987
(58,119)
$ 10,000
1988
1,601 Volunteer reported the same respective amounts on its 1987 and 1988 Forms 1120S, and the 1986 Form 1120S that was prepared by Finn & Rose showed $ 5,135 of ordinary income. Respondent audited petitioners' 1986 joint individual income tax return and did not challenge petitioners' inclusion of subchapter S pass-through income from Volunteer for 1986. OPINION The sole issue for decision is whether Volunteer filed a timely election under section 1362(a) to be an S corporation for 1987. Although petitioner took precautions to ensure that the original Form 2553 was timely mailed, he did not take the added (and, in this case, necessary) precaution of having it sent by registered or certified mail. In order for Volunteer to have made a timely S election for calendar year 1987, it had to file a signed Form 2553, including the consent of petitioner, before March 15, 1987. [4] Sec. 1362(a) and (b)(1); sec. 18.1362-1(a), Temporary Income Tax Regs., 48 Fed. Reg. 3591-3592 (Jan. 26, 1983). Filing, generally, "is not complete until *242 the document is delivered and received." United States v. Lombardo, 241 U.S. 73, 76 (1916). Proof that a document has been sent by registered mail or certified mail and that the envelope was properly addressed would have constituted prima facie evidence that the document was delivered. Sec. 301.7502-1(d)(1), Proced. & Admin. Regs. Petitioner, however, did not send the original Form 2553 by certified or registered mail. Notwithstanding a taxpayer's failure to use certified or registered mail, we have observed that proof that a document was properly mailed will create a "presumption that the document was delivered and 'was actually received by the person to whom it was addressed.'" Estate of Wood v. Commissioner, 92 T.C. 793, 798 (1989) *243 (quoting Hagner v. United States, 285 U.S. 427, 430 (1932) and citing 19 cases supporting that presumption), affd. 909 F.2d 1155 (8th Cir. 1990); see also Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992). The presumption of delivery may be rebutted, but not by "mere negative evidence of absence of any record of receipt". Zaretsky v. Commissioner, T.C. Memo. 1967-247; Anderson v. United States, supra at 492; cf. with 2 Williston, A Treatise on the Law of Contracts, sec. 6:32, at 350-354 (4th ed. 1991) (the common law mailbox rule of contract law in which actual delivery of an acceptance is immaterial to the creation of a contract); Farnsworth, Contracts 184 (2d ed. 1990) (risk that acceptance will be lost in the mails is on the receiving party). When a taxpayer does not have documentary evidence that a form was mailed, we have allowed indirect evidence to prove that the form was mailed. See Estate of Wood v. Commissioner, supra; Mitchell Offset Plate Service, Inc. v. Commissioner, 53 T.C. 235, 240 (1969); *244 Hiner v. Commissioner, T.C. Memo. 1993-608; cf. Shuford v. Commissioner, T.C. Memo. 1990-422, affd. without published opinion 937 F.2d 609 (6th Cir. 1991) (Commissioner can submit extrinsic evidence to prove timely mailing of notice of deficiency). Evidence of habit is not sufficient to prove mailing, Hiner v. Commissioner, supra, but direct testimony that a postmark was affixed may be sufficient, Estate of Wood v. Commissioner, supra.
Petitioners have provided considerable evidence that the original Form 2553 was mailed. Ms. Gose recalled that she had prepared the original Form 2553 for mailing and that she had given it to Mr. Traylor to take to the post office. Although Mr. Traylor did not specifically remember the events of January 21, 1987, petitioner provided his memorandum to Ms. Gose, on which, shortly after Mr. Traylor took the original Form 2553 to the post office, she had noted: "Taken to post office by Harold [Traylor]". We believe Mr. Traylor when he said that, if Ms. Gose told him that an envelope was important and needed to be mailed *245 that day, he would have mailed it that day, without fail, by taking it into the post office. Although evidence of office habit is not sufficient to prove mailing, Hiner v. Commissioner, supra; Leather v. Commissioner, T.C. Memo. 1991-534; Parkin v. Commissioner, T.C. Memo. 1986-59; Ober v. Commissioner, T.C. Memo. 1980-513, the testimony in this case goes beyond mere habit evidence and establishes that the original Form 2553 was mailed. The Court of Appeals for the Sixth Circuit, to which this case is appealable, has rejected "the judicially-created presumption that material mailed is material received", Miller v. United States, 784 F.2d 728, 730 (6th Cir. 1986) (affg. dismissal of a refund suit), and has held "that the only exceptions to the physical delivery rule for the filing of tax returns are contained in section 7502", Surowka v. United States, 909 F.2d 148, 150 (6th Cir. 1990); see also Deutsch v. Commissioner, 599 F.2d 44, 46 (2d Cir. 1979). Because we *246 see no meaningful distinction between tax returns and tax election forms, petitioners may only rely on the delivery exceptions of section 7502. Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Section 7502(a) provides that if any * * * document required to be filed * * * within a prescribed period or on or before a prescribed date * * * is, after such period or such date, delivered by United States mail to the * * * office with which such * * * document is required to be filed, * * * the date of the United States postmark stamped on the cover in which such * * * document * * * is mailed shall be deemed to be the date of delivery * * *
If the original Form 2553 had been delivered by U.S. mail to respondent after March 15, 1987, but had been postmarked before March 15, 1987, the postmark date would have been deemed to be the date on which the form was filed, and the election to be an S corporation would have been timely. Secs. 1362(b)(1), 7502(a)(1); see Combs v. Commissioner, T.C. Memo. 1989-206, affd. without published opinion 907 F.2d 151 (6th Cir. 1990). *247 Petitioner provided evidence that Mr. Traylor took the envelope containing the original Form 2553 to the post office for timely mailing, and we believe that Mr. Traylor did mail it, but "[t]o obtain the benefit of section 7502, the taxpayer must offer proof of postmark -- not mere evidence of mailing". Estate of Wood v. Commissioner, 909 F.2d 1155, 1161 (8th Cir. 1990); see Anderson v. United States, supra at 491 (taxpayer actually saw the postal clerk postmark her return). Although the original Form 2553 was timely mailed, petitioners' evidence was insufficient to prove that the envelope containing the original Form 2553 was postmarked, and petitioners can not invoke section 7502. In Miller v. United States, supra at 731, the Court of Appeals for the Sixth Circuit stated: The only post-section 7502 cases cited in plaintiff's favor are two Tax Court opinions involving subchapter S corporation election filings. Zaretsky v. Commissioner, [T.C. Memo. 1967-247]; Mitchell Offset Plate Service, Inc. v. Commissioner, 53 T.C. 235 (1969). In light *248 of Foerster [v. Commissioner, T.C. Memo. 1981-32], and its reliance on Deutcsh [v. Commissioner, 599 F.2d 44 (2d Cir. 1979), affg. an unpublished order of this Court], it is obvious that Zaretsky and Mitchell Offset Plate Service are of questionable precedential value, at least in the context of obtaining jurisdiction.
In Surowka v. United States, supra at 150, the Court of Appeals for the Sixth Circuit stated: Plaintiffs argue that the recent tax court decision in Estate of Wood v. Commissioner of Internal Revenue, 92 T.C. 793 (1989) allows them to prove timely filing of their return by extrinsic evidence. We disagree. First, the tax court in Wood, unlike this court in Miller, found the judicially-created presumption, that proof of a properly mailed document is received, applied in section 7502 cases. 92 T.C. 798-99. Further, the tax court's holding in Wood that section 7502(c) creates a "safe harbor" for taxpayers who file by registered or certified mail was rejected by this court in Miller, 784 F.2d at 731. *249 More importantly, the tax court in Bruder v. Commissioner, [T.C. Memo. 1989-328], held that Wood's presumption of delivery did not apply to cases appealable to the Sixth Circuit because in Miller, the Sixth Circuit rejected the applicability of any such presumption and held that section 7502 creates the only exceptions to the physical delivery rule. [5]
As in Miller v. United States, supra, and Surowka v. United States, supra, petitioners have failed to show *250 that section 7502 applies. Instead, petitioners contend that the preprinted label attached to Volunteer's 1987 Form 1120S proves that the original Form 2553 was actually delivered to respondent. However, petitioners did not show that the original Form 2553 was the only reason, or even the most likely reason, that respondent would have sent the preprinted label attached to Volunteer's 1987 Form 1120S. Although petitioners contend that the label was sent with a Form 1120S package, the label does not indicate the type of form or package with which it was sent. It could have been sent with another package of forms, or it could have been sent in response to Volunteer's 1986 Form 1120S. In the 1988 letter, Volunteer's accountant stated that Volunteer had received a 1987 Form 1120S package, but at trial, he was only willing to testify, on the basis of the 1988 letter, that he was "reasonably certain" that Volunteer received a 1987 Form 1120S package. The 1988 letter was prepared 9 months after the 1987 Form 1120S package would have been received by Volunteer, and we do not think Volunteer's accountant would have been much more than "reasonably certain" when he wrote the 1988 letter. *251 Petitioners were unable to draw the necessary connections between the preprinted label and the original Form 2553, and they have not proved that the original Form 2553 was actually delivered to respondent. Having found petitioners' evidence insufficient to prove timely filing under Miller v. United States, 784 F.2d 728 (6th Cir. 1986), and Surowka v. United States, 909 F.2d 148 (6th Cir. 1990), we conclude by reminding petitioners, other taxpayers, and their counsel, of the way to avoid the risk that timely mailed tax documents will not be received. Section 7502(c) provides that use of registered mail or certified mail provides prima facie evidence that the document was delivered, and that the date of registration or the date of the U.S. postmark on the certified mail receipt is the delivery date. The additional cost and inconvenience of sending tax forms and communications by registered or certified mail is a small price to pay for the assurance of having proof that those forms and communications will be deemed, for tax purposes, to have been delivered. To reflect the foregoing, Decision will be entered for *252 respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for 1987, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There appear to be three related errors on the 1987 Form 2553: First, the question, "Is the corporation an outgrowth or continuation of any form of predecessor?" was answered "No"; second, the date of incorporation shown is Nov. 8, 1986; and third, question A was answered, although it should only be answered if the election takes effect for the first year of the corporation's existence. The answers were given under the belief of Finn & Rose that petitioner had bought the assets of Volunteer and not the stock. Respondent did not challenge the validity of the election on the ground of any of these errors, and we attach no significance to them.↩
3. Petitioner has filed a motion to strike the testimony about this policy, which was given by respondent's witness, a Memphis Service Center employee. We will deny that motion. Because we have previously granted respondent's motion to rule that the policy was irrelevant, we would not allow respondent to rely on it to rebut proof that the 1987 Form 2553 was received. The policy is irrelevant to our decision, and our decision would be the same irrespective of whether the testimony were stricken.↩
4. Although the original Form 2553 was intended to be effective on Nov. 8, 1986, and petitioner reported the income of Volunteer as if a Form 1120S for the period Nov. 8 through Dec. 31, 1986, had been filed, the sole issue before us is whether the original Form 2553 was effective for 1987.↩
5. Applying the rule of Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), in a case appealable to the Court of Appeals for the Sixth Circuit, Bruder v. Commissioner, T.C. Memo. 1989-328↩, held that the taxpayers' burden of proving that they filed a return was not assisted by any presumption and that the taxpayers needed to prove actual physical delivery.